[S. F. No. 22619.   In Bank.   Mar. 20, 1969.]

WALTER S. COOPER, Plaintiff and Appellant, v. ESTERO MUNICIPAL IMPROVEMENT DISTRICT et al., Defendants and Respondents; T. JACK FOSTER et al., Interveners and Respondents.

Funsten & Caldwell, James W. Funsten and David B. Caldwell for Plaintiff and Appellant.

Wilson, Jones, Morton & Lynch, John E. Lynch and Robert G. Auwbrey for Defendants and Respondents.

Long & Levit, Bert W. Levit and Victor B. Levit for Interveners and Respondents.

BURKE, J.—Plaintiff is a resident and taxpayer in the Estero Municipal Improvement District, which was created by special act of the Legislature in 1960 (hereinafter sometimes called the Estero Act). (Stats. 1960, First Ex. Sess., ch. 82.) He appeals from a judgment of dismissal (entered October 31, 1967) which followed the sustaining of general and special demurrers to his second amended petition for mandate. We have concluded that except for the third count of the petition the trial court correctly determined that plaintiff has failed to state a cause of action.

Before discussing the allegations of the petition it is appropriate to clarify the context in which plaintiff has appealed, as the parties disagree as to which of plaintiff's pleadings is the subject of this appeal.

Plaintiff's original petition for mandate alleged that he was suing on behalf of over 100 persons similarly situated, and named as defendants the district and its directors. A complaint in intervention was thereafter filed, with leave of court, by several parties known as the Foster defendants.[1] Plaintiff then filed a first amended petition for writ of mandate, which was followed by a second amended petition. The second amended petition is the only pleading of plaintiff properly before this court and the only defendants are those described above (the district, its directors, and the Foster defendants).

After plaintiff filed his second amended petition a complaint in intervention was filed by Wayne A. McFadden and the Foster City Community Association on behalf of two thousand residents of Foster City. The association later filed an amended complaint in intervention, to which plaintiff demurred. No ruling on that demurrer appears in the record and there is no justiciable issue, therefore, regarding the first amended complaint in intervention filed on behalf of the Foster City Community Association. The association has not filed a brief on appeal.

Plaintiff filed a cross-complaint couched in ten causes of action, to the association's first complaint in intervention. The cross-complaint designated as defendants not only the district, its directors, and the Foster defendants, but Mc-

---

[1]The Foster defendants are T. Jack Foster, his three sons, T. Jack Foster & Sons (a copartnership composed of the individual Fosters), and a corporation whose stock is wholly owned by the individual Fosters.

Fadden, a state senator, the district's lawyer, and others as well. The trial court ordered that the cross-complaint be stricken and plaintiff concedes on appeal that he "could not have a petition and a cross-complaint in the same action."[2]

■ Plaintiff made a motion to amend his second amended petition for writ of mandate so as to substitute the cross-complaint therefor. The trial court denied the motion and plaintiff does not argue in his brief that such denial was erroneous. Nevertheless, he appears to assume that he may treat the cross-complaint as the appropriate pleading before this court on the ground that "it is the final and most complete statement of the issues which petitioner sought to litigate."

There was ample justification for the trial court's refusal to permit the filing of the cross-complaint as an amended petition for writ of mandate. It appears to be plaintiff's seventh attempt to state a cause of action on substantially similar grounds, three complaints and amendments having been filed in the companion case of *Cooper* v. *Leslie Salt Co.* (S.F. 22616), *ante,* p. 627 [75 Cal.Rptr. 766, 451 P.2d 406], and three petitions and amended petitions in the present action.

We turn to the second amended petition for writ of mandate, which is couched in six causes of action and names the district and its directors as defendants and the Fosters as interveners. As stated, the trial court sustained defendants' general and special demurrers, and dismissed the action.

■ The first cause of action alleges a melange of activities on the part of defendants. Most of the matters have either been discussed in the companion case of *Cooper* v. *Foster, et al.* or do not constitute assertions of wrongful conduct. The only allegations which do not come within these two categories assert that the district purchased land from the Fosters which had no substantial value and is subletting office space at an exorbitant rental in a building owned by the Fosters, and that the district has made a payment to the Fosters' attorney for services allegedly rendered to the Fosters. It is alleged that T. Jack Foster & Sons is a trustee of the district by virtue of its domination of the district's financial affairs, that plaintiff demanded that T. Jack Foster & Sons account to the district for the benefits received from it, and that such demand was refused.

---

[2]Plaintiff has also noticed an appeal from a second judgment of dismissal which was entered (on November 27, 1967) with respect to a defendant named only in plaintiff's cross-complaint. In the light of plaintiff's concession, that purported appeal will be dismissed as moot.

The prayer is that the Foster defendants be compelled to account for the benefits received from the district or, alternatively, that the district "cause an investigation to be made of the disbursements" to the Fosters and report to the court thereon.

It is immediately apparent that mandamus is not a proper vehicle for the asserted grievances. So far as pertinent here, the writ is available only to compel the "performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station." (Code Civ. Proc., § 1085.) Plaintiff alleges nothing to indicate that Foster has a duty to account to him, nor is it asserted that the district is enjoined by law to "cause an investigation to be made" of its disbursements to Foster.

Plaintiff apparently views the first cause of action as one for an accounting. Any such action must be predicated upon the theory that plaintiff is suing on behalf of the district. Even if such an action by a taxpayer be considered tenable, the petition does not allege that plaintiff is suing on behalf of the district, nor is it alleged that he made a demand upon the district to request an accounting from the Fosters (see 1 Cal. Jur.2d 426) and that such a demand was refused. In fact plaintiff placed in the record a document executed approximately two weeks after the second amended petition was filed, which indicates that because of criticism by certain persons an audit would be made of all transactions between the district and Foster, to be paid for by these defendants.[3]

■ The second cause of action alleges that the district paid Hydraulic Dredging Company, not a defendant in this action, a substantial sum of money and that the district's dealings with Hydraulic "were not the result of" public bidding. It is prayed that the district obtain an accounting to show how Hydraulic disbursed the funds and what value it gave for them. Again, the remedy of mandate is inappropriate since the district has no duty to conduct the proposed investigation. There is no allegation of wrongdoing and no grounds are alleged upon which a court may order an accounting.

■ The third cause of action is based upon an asserted violation of section 193 of the Estero Act. The section as amended in 1963 (Stats. 1963, ch. 995) provides that if the board appoints a depositary for its funds it shall also appoint

---

[3]Defendants assert in their brief, and plaintiff has not disputed, that the audit was completed in November 1967 and is a public record of the district.

a finance officer, who must be bonded for at least $250,000. The petition alleges that the district has appointed a depositary, that it had an appropriate bond until the end of 1966, but that plaintiff is informed and believes that the district no longer carries a fiduciary bond in compliance with the section. It is also alleged that the district had refused to inform plaintiff of the terms of any bond it might have. Plaintiff prays that the district either make proof that it has a fiduciary bond in compliance with the section or that it place its funds into the hands of some other body which carries such a bond.

The district in its return replied that such a bond existed and attached a copy of a bond for $250,000, insuring "all offices and departments" of the district. It appears on the face of the pleadings, therefore, that the district did not have an individual bond for a finance officer in the amount of $250,000, as required by section 193, but that all of its employees (and the directors) were insured for this sum in the aggregate.[4]

The district argues that the allegations of the third cause of action are insufficient because they do not allege that the district has in fact employed a finance officer or if a finance officer was employed by the district, that he was acting in that capacity while unbonded. Since the allegations state that section 193 requires the district to employ a finance officer in the event it designates a depositary and it is alleged that a depositary has been chosen by the district, they appear to be sufficient as against a general demurrer. No special demurrers were filed by defendants on the ground that the allegations of the third cause of action were uncertain or ambiguous with regard to whether or not the district employed a finance officer.

As the section requires that a finance officer be employed and bonded if a depositary is designated, and such designation is alleged, the relief to which plaintiff would be entitled is to compel the district to secure a faithful performance bond for $250,000 to insure its finance officer, if the district has not already done so. Accordingly, the trial court erred in sustaining the demurrer to the third cause of action.

The allegations of the fourth cause of action appear incomprehensible. It is asserted that certain money was trans-

[4]Plaintiff also asserts that the bond does not guarantee faithful performance, as required by section 1501 of the Government Code, but an examination of the bond shows that it insures against loss occasioned by the failure of the district's employees or directors to faithfully perform their duties.

ferred by the district from a park fund to a reclamation fund, that the money in the reclamation fund will be used to make "additional interest payments" on reclamation bonds when they become due, that these future interest payments will exceed the amount in the reclamation fund so that additional monies will be removed from other bond funds for transfer to the reclamation fund, and that all this is "in violation of law."

It is prayed that the directors be compelled to replace the money transferred from the park fund and to cease transferring money from any fund except for the purposes "lawfully authorized by the election . . . authorizing the sale of bonds to create the fund."

Although the broad general allegation is made that all these activities are in violation of law, this is merely a conclusion and no facts are alleged which would justify the granting of any relief. The trial court obviously acted properly in sustaining the demurrer to the fourth cause of action.

The fifth cause of action alleges that, according to a bond statement issued by the district, it plans to pay over $2,012,000 for "interest and other expenses" from the proceeds of water or sewer bonds and over $6,000,000 from the proceeds of other bonds to pay interest in the years after 1967. It is also alleged that a resolution of the board states that $2,400,000, or more than 25 percent of the current bond issues, will be used to pay interest on these and prior bonds within the next 12 months and that the election authorizing the issuance of the bonds did not authorize their use for payment of interest on prior outstanding bonds. It is prayed that a judgment be issued directing that none of the bond sale proceeds be used for payment of interest on prior bonds.

It does not appear that the payment of interest from bond proceeds is illegal,[5] or that the law requires that a bond "election" specifically "authorize" the use of proceeds for payment of interest. According to sections 106 and 107 of the Estero Act, the board may call a bond election by a resolution, which may submit to the voters the question of issuing bonds "to make all the outlays or so many of them as may be selected." The fifth cause of action alleges that the board in its resolution stated that more than $2,400,000 of current bond sales would be used to pay interest on bonds, and there is no allegation that the provisions of sections 106 and 107 were not

---

[5]Section 178 of the act provides that the proceeds of bond moneys may be used for interest and working capital for the period of construction and for 12 months thereafter.

complied with as to the other bond sales mentioned in the fifth cause of action.

■ The sixth cause of action seeks to compel the district to obtain a welter of financial details and other information from T. Jack Foster & Sons before the district expends any further funds for the "benefit of T. Jack Foster & Sons or their lands."[6] The grounds upon which this relief is sought are that T. Jack Foster & Sons has outstanding debts in large sums, that "it is improper" for the district to spend further public money on Foster lands unless Foster will be able to complete the development of the land, and that "it is doubtful that there will be sufficient value after improvement to yield taxes for repayment of interest and bonds unless capital is invested by T. Jack Foster & Sons."

What has been said above regarding the availability of mandamus to secure the relief sought in the first cause of action is also applicable with regard to the sixth. We can discern no remedy to which plaintiff is entitled under these nebulous allegations.

The judgment entered October 31, 1967, is reversed insofar as it dismisses the third cause of action against defendant district, and the trial court is directed to allow the district reasonable time in which to answer if it be so advised; in all other respects and as to all other defendants that judgment is affirmed.

Plaintiff's purported appeal from the judgment entered November 27, 1967, is dismissed.

Each side is to bear its own costs on appeal.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Sullivan, J., concurred.

Appellant's petition for a rehearing was denied April 17, 1969, and the opinion was modified to read as printed above.

---

[6] It is also prayed that the district be directed to pay plaintiff's attorneys' fees and costs if the action results in recovery of money for the district.